```
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF COLUMBIA
```

**UNITED STATES OF AMERICA**           )
                                       )  No. 1:06-cr-207-RWR
      v.                           )
                                       )
**KEVIN M. MILLER**                    )

Government's Opposition to Defendant's Motion to Suppress
<u>Physical Evidence</u>

The United States of America, by and through the United States Attorney for the District of Columbia, hereby opposes defendant Kevin M. Miller's motion to suppress physical evidence.

<u>Background</u>

On June 20, 2006, at approximately 6:46 p.m., two MPD officers operating in an undercover capacity purchased crack cocaine and heroin from two subjects standing in the area of the 300 block of Fiftieth Street, N.E., Washington, D.C., an area known for illicit sales of narcotics. The subjects were standing with other persons nearby, one of whom was the defendant. As the officers walked out of the area with the contraband, the defendant called out that he had "raw," which is a street term for heroin.

Once out of the immediate area, the officers broadcast a look-out for the subjects who had sold them the crack and heroin, and an arrest team, wearing visible MPD paraphernalia, moved in. As the MPD arrest team approached the group, the defendant grabbed the right side of his waistband area and began to flee. A member of the arrest team quickly broadcast a radio look-out

for the defendant, and the direction he was running.  The lookout description was for a black male, wearing a white t-shirt, with a red bandana on his head.

Three other officers, who were inside a stationary marked MPD cruiser in the area of the intersection of Fifty-first Street and Cloud Place, N.E., about two blocks away, heard the broadcast for the fleeing defendant.  One of the officers turned his head and saw the defendant running down a nearby hill.  As he ran, the defendant continued to keep his right hand clutched in the area of the right side of his waistband.  The officer who spotted the defendant exited the cruiser and began to pursue him on foot.  The pursuing officer was wearing a MPD raid jacket, which had "MPD" and "POLICE" written in large lettering on it.

The defendant ran up a hill toward the rear of an apartment building located at 225 Fifty-first Street, N.E.  The pursuing officer was approximately 10 feet behind the defendant when the defendant ran into a dead-end "cut" in the rear of the building.  The cut, a rectangular area about 15 feet long, open on one end, is formed by the irregular-shaped rear wall of the building, with the longer two sides of the rectangle formed by a portion of the building's brick wall and a six-foot high concrete wall, running parallel to each other.  These two walls both meet against the main rear brick wall of the building, closing off the rectangle in the back.

As the officer followed the defendant into the cut, he saw the defendant reach with his right hand into the right side of his waistband, remove a silver-colored handgun, and toss it against the right-hand wall of the cut.  The gun landed on the ground between the wall and a two-foot high electrical utility box.  At this point, the officer yelled for the defendant to show his hands.  The defendant, however, ignored the command and attempted to scale the six-foot wall.  At that point, the officer grabbed the defendant and held him inside the cut, and then placed him under arrest.

When he was stopped, the defendant, a black male, was wearing a white t-shirt and had a red bandana on his head.

Subsequently, the officer who had radioed the look-out for the fleeing subject, identified the defendant as the person he had seen flee.  In a search incident to the arrest, police officers seized a black mask that was inside the defendant's front left pants pocket.  The red bandana was also seized.  The handgun, a Bryco-Jennings 9 mm semi-automatic pistol, was recovered from the scene.  It was found to be loaded with seven rounds.

<u>There Was No Seizure For Fourth Amendment Purposes Until The Defendant Was Captured At The Conclusion Of The Pursuit.</u>

The Fourth Amendment prohibits "'unreasonable searches and seizures' by the [g]overnment, and its protections extend to brief investigatory stops of persons or vehicles that fall short

of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting U.S. Const. Amend IV).

In California v. Hodari D., 499 U.S. 621, 623 (1991), the Supreme Court considered whether a person is "seized" for Fourth Amendment purposes when a police officer is chasing him. The Court answered the question, unequivocally, "no." Id. at 623-29.

The facts of Hodari D. are, in fact, very close to those in this case. In Hodari D., two police officers, both wearing jackets embossed with "Police" on the front and back," were in an unmarked car patrolling a high-crime area, late at night. Id. at 622. As they turned a corner in their vehicle, they saw four or five youths huddled around a small red car. Id. at 622-23. When the youths saw the officers, all of them began to flee, and the small red car drove off at a high rate of speed. Id. at 623. One of the officers exited the unmarked car and began to pursue one of the youths. Id. As the officer closed in on the youth, the youth turned to see the officer chasing him, and then tossed away a small rock. Id. A moment later, the youth, Hodari, was captured. Id. Subsequently, the discarded rock, which turned out to be crack cocaine, was recovered. Id.

In his juvenile proceedings, Hodari moved to suppress the crack cocaine, arguing he had been unlawfully "seized" during the police chase, prior to tossing away the crack. Id. The court to first hear the motion ruled against Hodari, but an intermediate

4

state appellate court reversed, holding that Hodari had been seized when he saw the officer running toward him, prior to discarding the crack. Id.

On certiorari review, the Supreme Court reversed. Id. at 629. The Court held that when a police officer makes a "show of authority" against a subject, but one without the application of physical force, and the subject refuses to yield, there is no seizure for Fourth Amendment purposes. Id. at 625-26. Accordingly, the Court ruled that the crack cocaine had been "abandoned" by Hodari and was not the fruit of any seizure, and the original motion to suppress had been properly denied. Id. at 629.

The facts of this case involve a discarded gun, as opposed to discarded narcotics. But like Hodari D., the officers in this case did not apply physical force to the fleeing subject, i.e., the defendant, until after he discarded the contraband. Accordingly, another officer's recovery of the loaded gun was not the result of any seizure, proper or otherwise.

### The Officers Had At Least Reasonable And Articulable Suspicion To Lawfully Stop The Defendant Once He Began To Flee.

The recovery of the bandana and the mask are plainly the result of a seizure, but, unfortunately for the defendant, a lawful one.

It is well established that "unprovoked flight" from a heavy narcotics trafficking area is sufficient to justify an

investigative detention under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124-26 (2000). A <u>Terry</u> stop, of course, does not require that the police have probable cause that the person stopped has committed a crime; all that is required is that the officer have a "reasonable, articulable suspicion that criminal activity is afoot." <u>Wardlow</u>, 528 U.S. at 123.

In this case, even before the defendant began to flee, the defendant had been standing in a high-narcotics trafficking area, near two subjects who had sold suspected crack cocaine and heroin to undercover police officers. He had also called out, "Raw," using a street term known to the officers to mean heroin, in order to advertise that he had access to heroin for sale. Moments later, upon seeing a group of police officers, the defendant began to run away.

At that point, the police had reasonable, articulable suspicion, at the very least, to execute a <u>Terry</u> stop in order to investigate whether the defendant had committed the offenses of possession of heroin, or possession of heroin with the intent to distribute, in violation of D.C. and federal law. <u>See</u> 21 U.S.C. §§ 812, 841, 844; D.C. Code §§ 48-902.04, 48-904.01. When the defendant tossed away the gun, at least three additional bases to stop the defendant arose, i.e., suspicion of being in possession of an unregistered firearm and carrying a pistol without a

license outside the home or place of business, in violation of D.C. law, see D.C. Code §§ 7-2502.01, 22-4504(a), and suspicion of using and carrying a firearm during and in relation to the commission of a drug trafficking offense, see 18 U.S.C. § 924©.

In fact, especially after the defendant tossed away the gun, the pursuing officer had probable cause to make a warrantless arrest of the defendant for any of the above violations. See United States v. Sawyer, 244 F.3d 675, 680-81 (7th Cir. 2000) (holding that police had probable cause to arrest defendant for carrying a concealed weapon, in violation of Illinois law, where they saw defendant standing alone in a high-crime area, the defendant ran when an officer approached him, and the officer saw the defendant toss away what appeared to be a firearm). See generally Maryland v. Pringle, 540 U.S. 366, 370-71 (2003) (holding that probable cause to arrest requires only a reasonable, particularized belief in a suspect's guilt). Once the stop, or arrest, was effectuated, the recovery of the bandana and the mask from the defendant's person was lawful as a search incident to arrest. See Chimel v. California, 395 U.S. 752, 762-63 (1969).

## Conclusion

The defendant's motion should be denied. A proposed order is attached.

Respectfully submitted,

```
                    KENNETH L. WAINSTEIN


          by:     _____
                  Michael C. Liebman
                  Assistant U.S. Attorney
                  D.C. Bar No. 479562
                  555 Fourth Street, N.W., room 4231
                  Washington, D.C.  20530
                  353-2385
                  michael.liebman@usdoj.gov
```