```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      )
                              )  No. 1:06-cr-207-RWR
      v.                      )
                              )
KEVIN M. MILLER               )
```

Government's Memorandum in Aid of Sentencing

The United States of America, by and through the United States Attorney for the District of Columbia, hereby offers this memorandum in aid of the sentencing of defendant Kevin M. Miller. The defendant is to be sentenced on October 26, 2007, for being a felon in possession of a firearm and ammunition, arising from an incident on June 20, 2006.

The Defendant's Arrest on June 20, 2006

On June 20, 2006, at approximately 6:42 p.m., two Metropolitan Police Department undercover officers walked into the 300 block of Fiftieth Place, N.E., Washington, D.C., an area known to the police for heroin sales, and had a conversation with a person about purchasing heroin. The person asked the undercover officers how much they wanted, and one of them, Officer Clarence Brooks, replied, "four dimes." Officer Brooks then handed the person $40 in MPD pre-recorded funds, and the person told the officers to follow him.

The person led the undercover officers to the front of 313 Fiftieth Street, N.E., a short distance away, where they met up with another individual, one Willie Hunter. The first person

spoke briefly with Hunter and then handed Hunter the $40 in exchange for two small ziplocks of heroin, which the first person then handed over to Officer Brooks.  Officer Brooks and the undercover officer then walked away, and a third undercover officer, the "eyes" of the operation, signaled for the arrest team to move in.

As Officer Brooks and the other undercover officer were walking away, a group of people, including the defendant, began walking toward them.  As the group approached, the defendant called out, "raw, raw," indicating that he too had heroin for sale.[1]  Officer Brooks contemplated making a purchase from the defendant, but within moments the arrest team, made up of officers in MPD uniform, had moved in.

The defendant, seeing the uniformed officers approaching, grabbed the right side of his waistband area and began to flee.  A member of the arrest team quickly broadcast a radio look-out for the defendant, and the direction he was running.[2]  The look-out description was for a black male, wearing a white t-shirt, with a red bandana on his head.

---

[1] While this evidence did not come out at trial, it was presented by the government during a pretrial suppression hearing on September 12, 2006.

[2] Hunter was arrested near 313 Fiftieth Street.  The person who had led the undercover officers to Hunter was not apprehended.

Three other officers, who were inside a stationary marked MPD cruiser in the area of the intersection of Fifty-first Street and Cloud Place, N.E., about two blocks away, heard the broadcast for the fleeing defendant. One of the officers turned his head and saw the defendant running down a nearby hill. As he ran, the defendant continued to keep his right hand clutched in the area of the right side of his waistband. The officer who spotted the defendant exited the cruiser and began to pursue him on foot. The pursuing officer was wearing a MPD raid jacket, which had "MPD" and "POLICE" written in large lettering on it.

The defendant ran up a hill toward the rear of an apartment building located at 225 Fifty-first Street, N.E. The pursuing officer was approximately 10 feet behind the defendant when the defendant ran into a dead-end "cut" in the rear of the building. The cut, a rectangular area about 15 feet long, open on one end, is formed by the irregular-shaped rear wall of the building, with the longer two sides of the rectangle formed by a portion of the building's brick wall and a six-foot high concrete wall, running parallel to each other. These two walls both meet against the main rear brick wall of the building, closing off the rectangle in the back.

As the officer followed the defendant into the cut, he saw the defendant reach with his right hand into the right side of his waistband, remove a silver-colored handgun, and toss it

against the right-hand wall of the cut.  The gun landed on the ground between the wall and a two-foot high electrical utility box.  At this point, the officer yelled for the defendant to show his hands.  The defendant, however, ignored the command and attempted to scale the six-foot wall.  At that point, the officer grabbed the defendant and held him inside the cut, and then placed him under arrest.

When he was stopped, the defendant, a black male, was wearing a white t-shirt and had a red bandana on his head.

Subsequently, the officer who had radioed the look-out for the fleeing subject, identified the defendant as the person he had seen flee.  In a search incident to the arrest, police officers seized a black mask that was inside the defendant's front left pants pocket.  The red bandana was also seized.  The handgun, a Bryco-Jennings 9 mm semi-automatic pistol, was recovered from the scene.  It was found to be loaded with seven rounds, including one in the chamber.  The serial number on the gun had been obliterated.

<u>The Trial and Verdict, the Defendant's Failure to Comply With
       Release Conditions, and His Subsequent Re-capture</u>

The defendant had two prior felony convictions, one in 1995 for attempted possession with intent to distribute heroin, in District of Columbia Superior Court; and one in 1999 for possession of a firearm by a convicted felon, in this court.  The June 20, 2006, incident described above led to his indictment on

one count of being a felon in possession of a firearm and ammunition. On January 10, 2007, following a jury trial, he was found guilty as charged.

Following return of the guilty verdict, the government moved for the defendant's detention pending sentencing. The Court denied the government's motion but ordered the defendant to report the next day to the Pretrial Services Agency for orientation into the heightened supervision program. The defendant failed to report as required, and on January 18, 2007, this Court issued a warrant for the defendant's arrest.

On June 16, 2007, at approximately 7:15 p.m., the defendant was arrested when a MPD officer found him in the 5100 block of Nannie Helen Burroughs Avenue, N.E., Washington, D.C. The officer, who had reviewed a photograph of the defendant shortly before, approached him and inquired if he was Kevin Miller. The defendant stated he was "Kendric Miller," the brother of Kevin Miller. The officer was skeptical, and detained the defendant. The defendant continued to claim he was Kendric Miller up until he was conclusively identified as the defendant through his fingerprints.

### The Applicable Sentencing Statutes

Under 18 U.S.C. § 924(a)(2), the defendant faces a statutory maximum term of imprisonment of 10 years. He also faces a statutory maximum period of supervised release of three years,

pursuant to 18 U.S.C. § 3583(b)(2), and a maximum fine of $250,000, pursuant to 18 U.S.C. § 3571(b)(3). He must also pay a mandatory special assessment of $100, pursuant to 18 U.S.C. § 3013(a)(2)(A).

### Application of the Sentencing Guidelines

The government concurs with the calculations of the Probation Office regarding the defendant's criminal history. The government disputes the Probation Office's calculation of the adjusted offense level, for the failure to include an enhancement based on the defendant's use of the firearm and ammunition in connection with another felony offense, pursuant to U.S.S.G. § 2K2.1(b)(6) (2006) (formerly U.S.S.G. § 2K2.1(b)(5)).[3,4] The

---

[3] The final Presentence Report states that the government noted no material/factual inaccuracies. While that was true with regard to the initial report, dated August 16, 2007, it is not the case with regard to the final report of September 21, 2007. That is because the initial report included an enhancement under U.S.S.G. § 2K2.1(b)(6). This was removed from the final report, however, apparently in response to the defendant's objections to the initial report. The government has advised the Probation Office that it disagrees with its decision to drop that enhancement.

In addition, in a matter of less significance, the government would also note that the final report incorrectly implies, at page 16, ¶ 64, that there was a plea agreement in this case.

[4] The government's argument focuses on the application of U.S.S.G. § 2K2.1(b)(5). Following the defendant's re-capture, the Court had instructed the parties that their sentencing memos should include an analysis of the applicability of the obstruction of justice enhancement in U.S.S.G. § 3C1.1. However, the defendant did not note any objection to that enhancement when it was recommended by the Probation Office in the initial PSR,

government submits that the defendant used the firearm and ammunition in this case to facilitate the crime of possession with intent to distribute heroin.

Section 2K2.1(b)(6) of the Sentencing Guidelines sets forth a specific offense characteristic applicable to defendants guilty of violations of 18 U.S.C. § 922(g).  Specifically, the guideline subsection provides in pertinent part:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by four levels.  If the resulting offense level is less than 18, increase to level 18.

U.S.S.G. § 2K2.1(b)(6).

The application notes to the guideline state that "subsection (b)(6) . . . appl[ies] if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1, app. note 14(A).  The notes give as an example that, when the other offense is a drug trafficking offense and the firearm "is found in close proximity to drugs, drug manufacturing materials, or drug paraphernalia," the

---

and the same enhancement appears again in the final report.  The government submits the obstruction enhancement is correctly applied.  See United States v. Defeo, 36 F.3d 272, 276-77 (2d Cir. 1994) (upholding obstruction enhancement for defendant who failed to report to pretrial services, as ordered after guilty plea, and absconded, even though failure to report and abscondence did not delay sentencing); United States v. Perry, 908 F.2d 56, 59 (6th Cir.) (upholding obstruction enhancement based on defendant jumping bond while pending sentencing), cert. denied, 498 U.S. 1002 (1990).

enhancement would apply "because the presence of the firearm has the potential of facilitating another felony offense." Id. app. note 14(B). The notes also provide that "[a]nother felony offense" "means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Id. app. note 14©. Possession with intent to distribute heroin, even in minute quantities, is punishable under both the U.S. Code and the District of Columbia code with a prison term of up to 20 and 30 years, respectively. See 21 U.S.C. §§ 811©, Schedule I(b)(10), 841(b)(1)©; D.C. Code §§ 48-901.02(15), 48-902.04(2)(K), 48-904.01(a)(2)(A).

    The evidence in this case, presented both at trial and during the suppression hearing, shows, at least by a preponderance of the evidence,[5] that the defendant was in the immediate, actual possession of the loaded Bryco-Jennings 9 mm semi-automatic pistol when he called out "raw, raw," indicating he had heroin available for sale. Accordingly, his possession of the loaded pistol facilitated his commission of the offense of possession with the intent to distribute heroin. It is, of course, beyond debate that possession of a firearm facilitates,

---

    [5]That is the evidentiary standard to justify a sentencing enhancement. See In re Sealed Case, 345 U.S. App. D.C. 352, 354, 246 F.3d 696, 698 (2001).

or at least has the potential to facilitate, the possessor's distribution of illicit narcotics.  See United States v. Booker, 369 U.S. App. D.C. 276, 280, 436 F.3d 238, 242 (2006) (holding that expert testimony that with respect to drugs and guns, one often can't do without the other, accords with circuit case law).

United States v. Brown, 439 F. Supp. 2d 134 (D.D.C. 2006), is instructive.  In Brown, the defendant Melvin B. Brown was found guilty of being a felon-in-possession, and at sentencing the court, the Honorable John D. Bates, J., applied the above enhancement, after finding that the defendant had possessed the firearm in connection with the offense of possession with intent to distribute PCP.  Id. at 136-37.

The evidence at Brown's trial showed that Brown had been engaging in conduct consistent with drug-selling, specifically, approaching automobiles on the street and exchanging objects with individuals in the cars, all in an area known to the police for its PCP transactions.  Id. at 136.  After observing this conduct, police officers attempted to stop Brown after he got into the driver's seat of a parked Ford Focus.  Id.  The officers blocked the Focus with police cruisers, upon which Brown got out of the car and fled on foot.  As other officers chased him, Brown threw a black handgun to the ground.  Id.  He was captured shortly thereafter, and found to be in possession of $1006 in currency, consisting mostly of twenty-dollar bills.  Id.  A subsequent

search of the Focus found a vial filled with 20 milliliters of PCP stored in the console. Id.

Judge Bates ruled the enhancement applicable, notwithstanding that Brown, while indicted both for being a felon in possession and possession with intent to distribute PCP, was acquitted of the drug charge. Id. at 136-137.

Nor is it required that drugs be recovered from the defendant or that specific drugs be linked to the defendant for the enhancement to apply. In United States v. Huffman, 461 F.3d 777 (6th Cir. 2006), one Che Borges Huffman pled guilty to being a felon in possession and the sentencing court applied the above enhancement. Id. at 779, 786. On appeal, Huffman argued the enhancement should not have been applied because it was based essentially entirely on his uncorroborated post-arrest statements that the house--where police found him and an assault rifle--was used for drug trafficking. Id. at 786-88. Significantly, there is no mention in the opinion at all of any drugs being recovered from the house or from Huffman's person.

The Court of Appeals for the Sixth Circuit upheld application of the enhancement against Huffman. Specifically, the court held that there is no requirement that a defendant's own statements be corroborated before they can be used in support of a sentencing enhancement. Id. at 787. The court also found that aspects of Huffman's statement, including that the house had

been recently targeted in a drive-by, drug-related shooting, were supported by evidence that neighbors had recently called 911 to report shots being fired at the house and that the officers who found Huffman observed bullet holes in the outer and inner walls of the house.   Id. at 785, 787.

In this case, Officer Brooks's testimony at the suppression hearing, which this Court credited when it denied the motion to suppress, was that when the defendant yelled, "raw, raw," he was indicating that he had heroin available for sale.  Like the unidentified person whom Officer Brooks and the other undercover first interacted with, the defendant might not have had the heroin on his person, but might have had a stash nearby or been working with another person who was actually holding it. Moreover, the defendant's remarks--"raw, raw,"--are corroborated by the fact that the area where he made them is known for heroin sales and that the police had just purchased heroin from someone else in the same area.

Accordingly, the four-level enhancement of U.S.S.G. § 2K2.1(b)(6) should be applied.  Once applied the defendant's guideline range of imprisonment becomes 130 to 162 months, which is above the statutory maximum; his guideline range of supervised release becomes two to three years; and his guideline fine range becomes $12,500 to $125,000.

Other Sentencing Issues

In addition to the Sentencing Guidelines, the general sentencing statute requires the Court also to consider the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; the need for the sentence to afford adequate deterrence; the need for the sentence to protect the public from the defendant; and the need for the sentence to provide the defendant with educational or vocational training, medical care or other correctional treatment.  18 U.S.C. § 3553(a).[6]

In this case these factors support a sentence at the statutory maximum, which is essentially recommended by the Sentencing Guidelines.  First, with respect to the nature and circumstances of the offense, this defendant was not simply convicted of being a felon in possession of a firearm.  He was

---

[6]The Court is also required to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. The government submits that this consideration can be met by the Court imposing a sentence consistent with the Sentencing Guidelines.  See 28 U.S.C. § 991(b)(1)(B) (providing that a purpose of the Sentencing Commission is to establish sentencing policies and practices that avoid unwarranted sentencing disparities).

A final requirement in sentencing, that the Court consider the need to provide restitution to any victims, 18 U.S.C. § 3553(a)(7), is inapplicable here.

convicted of being a felon in possession of a firearm and ammunition, the ammunition was loaded in the firearm, there was a round in the chamber, the serial number on the gun had been obliterated, and the loaded gun was concealed on his person. Furthermore, as discussed above, he was in possession of the loaded gun in an open, public area, not in the safer confines of a home or a car, for example; the area was known for heroin sales; and he himself was attempting to engage in such sales at the time he possessed the loaded gun.

In addition, another circumstance of the offense, which dovetails as well with the history and characteristics of the defendant, is that the defendant was not simply a prior convicted felon.  He has two prior felony convictions, <u>one of which was itself a prior conviction for being a felon in possession of a firearm and ammunition.</u>  He also has a history of failing to comply with the terms of probation, when it was offered to him, as well failing to comply with release conditions.

The government submits that these circumstances and background compel a sentence of 120 months in prison for this defendant, followed by a period of supervised release of three years, in order that the sentence reflect the seriousness of the offense, promote respect for the law, provide adequate deterrence, and protect the public.  There does not appear to be a need for the defendant to receive medical or other correctional

treatment, although he appears to need drug education, which can be provided in an incarcerated setting. Significantly, he previously obtained a general equivalency degree while incarcerated, but might nonetheless benefit from additional education or vocational training, which can also be provided in an incarcerated setting. The government takes no position as to the appropriate fine.

Conclusion

The defendant should be sentenced to 120 months in prison followed by three years of supervised release.

                        Respectfully submitted,

                        JEFFREY A. TAYLOR
                        UNITED STATES ATTORNEY

                        /s/
by: _____
     Michael C. Liebman
     Assistant United States Attorney
     D.C. Bar No. 479562
     555 Fourth Street, N.W., room 9826
     Washington, D.C.  20530
     305-1396
     michael.liebman@usdoj.gov