IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Cr. No. 06-207 (RWR) |
| v. | ) | |
| | ) | |
| KEVIN MILLER | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Kevin Miller, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Miller respectfully asks the Court to sentence him to a period of 92 months, to be followed by three years of supervised release. Mr. Miller submits that a sentence longer than 92 months would further none of the purposes of sentencing beyond the infliction of additional punishment.

**BACKGROUND**

On July 11, 2006, Mr. Miller was charged, in a one-count indictment, with Unlawful Possession of a Firearm and Ammunition by a Person Convicted by a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

On January 10, 2007, Mr. Miller was convicted of the count with which he was charged following a jury trial.

**DISCUSSION**

**I.      THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in <u>Booker</u>, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. <u>See</u> 18 U.S.C. § 3553(a)(4)." <u>United States v. Booker</u>, _ U.S. __, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in <u>Booker</u> held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to <u>Booker,</u> therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in <u>Booker</u>–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of

the offenses charged.

>Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

>No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

>[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

## II. UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. MILLER SHOULD RECEIVE A SENTENCE OF 92 MONTHS.

### A. Statutory Provisions

Pursuant to the applicable statutes, the maximum term of imprisonment is ten years for this Class C Felony. 18 U.S.C. § 924(a)(2).

B.     Advisory Sentencing Guidelines

(I).    *Applicable Guideline Range*

The Probation Office, consulting the 2005 edition of the Guidelines Manual, has concluded that the Total Offense Level in this case is 24 and that Mr. Miller's criminal history category is V resulting in an advisory Guideline range of 92-115 months. Mr. Miller agrees with the Probation Office's calculation and vehemently opposes any enhancement under U.S.S.G. § 2K2.1(b)(6).[1]

The government contends that the enhancement noted above applies in the instant case because "the defendant used the firearm and ammunition...to facilitate the crime of possession with intent to distribute heroin." See Gov't Memo at 7. The government proceeds to discuss the applicability of this enhancement as though Mr. Miller had been charged with a drug-related felony or the gun had been found in close proximity to drugs or drug paraphernalia. Neither the complaint filed against Mr. Miller on June 21, 2006 nor the indictment filed the next month charged him with any offenses related to drugs or drug trafficking. Had the government had sufficient evidence to link Mr. Miller with the possession or distribution of drugs, they surely would have done so. According to the PD 163, completed by Metropolitan Police Department Officer Dino McFadden, police responded to the area of Mr. Miller's arrest as the result of a lookout following an undercover drug transaction. While Mr. Miller was seen "with" one of the suspects from the lookout when the police arrived on the scene, the PD 163 states that it was

---

[1] Section 2K2.1(b)(6) of the Sentencing Guidelines provides, in relevant part, that "[i]f the defendant (charged with possession of a firearm) used or possessed any firearm or ammunition in connection with another felony offense...increase by 4 levels." The D.C. Circuit has held that "preponderance of the evidence" is the appropriate standard to justify a sentencing enhancement. See In re Sealed Case, 246 F.3d 696, 698 (2001); United States v. Bapack, 129 F.3d 1320, 1324 (D.C. Cir. 1997).

"later revealed that Mr. Miller was not involved in the undercover drug transaction." Furthermore, when the police searched Mr. Miller in conjunction with his arrest, they found no drugs, money or drug paraphernalia on his person.

While the government relies on the fact that, at Mr. Miller's trial, Officer Brooks stated that he heard Mr. Miller say "raw, raw," no allegations of the sort are contained in the police report and, even if true, such allegations fall far short of establishing the government's burden. Given that the police determined that Mr. Miller had no connection to the undercover drug transaction, the government cannot prove by a preponderance of the evidence that the gun with which Mr. Miller was found was serving any purpose *vis a vis* the drugs that the lookout suspects may have possessed. The supposed connection between the gun with which Mr. Miller was charged the drugs allegedly distributed in the vicinity is far too attenuated; the government cannot expect to rely on the slang words "raw raw" to prove that Mr. Miller was committing the felony of possessing and/or distributing heroin.

The government cites two cases in support of its argument that, under the circumstances, a § 2K2.1(b)(6) enhancement is applicable.[2] Each of these cases, however, is easily distinguishable. In United States v. Brown, Judge Bates applied the enhancement in question after finding that a defendant–charged with both drug distribution and gun possession–had possessed a firearm in connection with a drug distribution offense. Unlike in this case, Brown was actually charged with intent to distribute an illicit substance. While he was acquitted of that conduct, evidence was introduced during the course of trial that he was found in possession of

---

[2] The third case cited by the government, United States v. Booker, 436 F.3d 238, 242 (2006), is cited for the proposition that guns have the potential to facilitate the possessor's distribution of illegal narcotics. The defense concedes that this is the case but submits that, in *this* case, there is simply insufficient evidence to find that the gun was facilitating the commission of any additional felony.

over $1,000 in currency and that a search of his vehicle revealed a vial filled with 20 milliliters of PCP. Furthermore, evidence was adduced at trial showing that Brown had engaged in such conduct as approaching automobiles on the street and exchanging objects with their occupants. In the Brown case, there were numerous indicia suggesting a connection between the gun thrown to the ground by the defendant and the drugs found in that defendant's vehicle. In the case at hand, all the government wants the Court to rely on is that the neighborhood where Mr. Miller was arrested was a high-crime area and that an officer heard Mr;. Miller saying "raw raw." As to where Mr. Miller was standing, the fact that he was not charged in connection with the other two individuals highlights that there is no evidence linking him to their drug-related transaction.

As for the case of United States v. Huffman, 461 F.3d 777 (6th Cir. 2006), there were far more factors linking the defendant's gun to drugs in that case than are present in the case at hand. In the Huffman case, the defendant stated to police that he lived in a house from which drugs were distributed, that rival drug lords not only supplied the house but were engaged in a feud, that one of the dealers had brought the very gun he was charged with possessing to the house, that he himself had called 911 following a shooting, and that he had smoked crack following the event. Clearly, Huffman's own statements provided ample evidence that the gun he was charged with possessing was possessed in conjunction with the commission of another felony. The Sixth Circuit in Huffman held that, "[i]n order to justify the four-level increase pursuant to [§2K2.1(b)(6)], the government has to establish that there was a nexus between the firearm and the other felony offense that is more than coincidental." Huffman, 461 F.3d at 788. Unlike the case in Huffman, the government here simply cannot establish such a nexus by a preponderance of the evidence.

C. Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

*I. Nature of the Offense*

The crime with which Mr. Miller was convicted is a serious one, especially in light of the fact that he has previously been convicted of possessing firearms. Mr. Miller had possessed a firearm before, knew that–as someone convicted of a crime–he was never again to carry one, and nonetheless possessed a weapon. Mr. Miller should be punished for doing so, but a period exceeding 92 months is unwarranted. There is no evidence that Mr. Miller used or brandished the gun or, as noted above, carried that gun in connection with the commission of another felony. The highest sentence Mr. Miller has ever received is one of 35 months' incarceration. He received that sentence in federal court following a conviction for unlawful possession of a

firearm. Should the Court impose a sentence of 92 months in this case, Mr. Miller would receive a sentence more than twice, and almost three times, as long as his prior sentence for gun possession. A sentence of 92 months is certainly sufficient to send a message both to Mr. Miller and the community and to serve as specific punishment for Mr. Miller's having engaged in the same crime for which he had been punished.  A longer sentence is not necessary for deterrent or rehabilitative purposes.

### II. Characteristics of the Defendant

As set forth in the Presentence Investigation Report (hereinafter "PSR"), Mr. Miller is a talented and bright individual who has too often channeled his energy in the wrong direction. For many years, Mr. Miller did well in school. Later, following a period of academic difficulties, he took advantage of the facilities available at the prison where he was incarcerated to complete his high school education. Mr. Miller is not close with his father, but maintains a loving relationship with his mother and, during his periods of freedom, has been a kind and gentle father to his children. He lights up when he speaks of his sons and daughter and wants very much to return to be a part of their life. His twin sons were born in mid-December, less than a month before Mr. Miller's trial in this case. While there is no excuse for Mr. Miller's having absconded, the fact that he had recently become a father again contributed to his fears about being sent away to serve a lengthy sentence.

Mr. Miller is a man who has made mistakes and repeatedly associated with the wrong individuals. He is also someone who has demonstrated an ability to be a productive member of society and a caring son and parent. He has interests and passions–such as a love for music–and would very much like to devote his energies to these activities when he is released from

incarceration.

*III. Needs of the Community and Public*

For the reasons stated in Section II, a sentence of incarceration longer than 92 months, or seven and a half years, is simply not necessary to protect the community and public. Such a sentence is substantial and, as noted above, more than twice as long as any previous sentence Mr. Miller has served. What Mr. Miller needs is time away from the streets and individuals with whom he has associated and time to reflect on the consequences of his actions. He should, and will, be removed from society for a significant period of time. Removal from society for ten years, however, serves no purpose other than additional punishment.

## CONCLUSION

For the reasons set forth above, as well as for any others that it may deem fair and reasonable, Mr. Miller asks the Court to sentence him to a period of 92 months.

A longer sentence of imprisonment is unnecessary to fulfill either a deterrent or a rehabilitative purpose.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

/s/
_____
Lara G. Quint
Assistant Federal Public Defender

625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500 ex.126